UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACQUELINE D. WARD,

                             Plaintiff,

   v.                                                  **DECISION AND ORDER**
                                                                      06-CV-355S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

     1.     Plaintiff Jacqueline D. Ward challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled by systemic lupus erythematosus ("lupus"), gastroesophogeal reflux disease ("GERD"), and anxiety and depression, since June 10, 2002. Plaintiff contends that because her impairments render her unable to work, she is entitled to disability benefits under the Act.

     2.     Plaintiff filed an application for Supplemental Security Income on July 19, 2002. She filed applications for Disability Insurance Benefits and Disabled Widow's Benefits on August 12, 2002. Plaintiff's eligibility for each of these benefit programs is contingent upon a finding of disability under the Act.

     3.     Plaintiff's applications were initially denied, prompting Plaintiff to request a hearing before an ALJ. The ALJ conducted a hearing on December 8, 2004, at which time Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on January 25, 2005, issued a written decision denying Plaintiff's applications for benefits. On March 28, 2006, the Appeals Council denied Plaintiff's request for review. Plaintiff filed

this action challenging Defendant's final decision on May 31, 2006.[1]

4.      On November 21, 2006, Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court deemed the motion submitted and reserved decision.[2]  For the following reasons, Defendant's motion is granted.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the

---

[1] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Because Plaintiff's counsel fell ill, briefing did not conclude until August 1, 2007.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 24);[3] (2) Plaintiff's lupus is a "severe" impairment within the meaning of the Act (R. at 25); (3) Plaintiff's medically-determinable impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 25); (4) Plaintiff retained the residual functional capacity to perform light work, but she cannot be exposed to sunlight for prolonged periods (R. at 25); (5) Plaintiff is able to perform her past relevant work as a retail store worker (R. at 25); and (6) Plaintiff's medically determinable conditions — lupus, GERD, and depression — do not prevent her from performing her past relevant work (R. at 25).  Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision.  (R. at 25.)

---

[3] Citations to the underlying administrative record are designated as "R."

11. Plaintiff lodges a number of challenges to the ALJ's decision. First, she argues that the ALJ improperly substituted his opinion for that of the consultative psychologist, Dr. Thomas Dickinson. Dr. Dickinson found that Plaintiff could tolerate most work-related tasks, but also noted that she has trouble performing tasks consistently, and has difficulty learning new assignments and remembering complex directions. (R. at 162.)

The ALJ rejected Dr. Dickinson's opinion with respect to Plaintiff's limitations because, in his view, it was not supported by Dr. Dickinson's own clinical findings (which were unremarkable), and was inconsistent with Plaintiff's medication regimen and treatment history. (R. at 23.) In particular, the ALJ noted that there was no evidence that Plaintiff ever took medication for anxiety or depression, or that she saw a psychiatrist, psychologist, or other mental health professional. (R. at 23.) Plaintiff conceded at the hearing that she never saw any mental health specialist. (R. at 344.) And although Plaintiff's primary physician, Dr. Edgar B. Bassig, prescribed Zoloft, Plaintiff stopped taking the medication after it made her gain weight. (R. at 346-47.) Notably, Plaintiff was not on depression or anxiety medication at the time of the hearing. (R. at 346.)

Accordingly, this Court finds that the ALJ considered Dr. Dickinson's opinion, analyzed it, and reasonably concluded that it was inconsistent with Dr. Dickinson's own findings and other evidence in the record. (R. at 22-23.) The ALJ did not substitute his own medical opinion for that of a medical provider.

12. Plaintiff next argues that the ALJ failed to properly apply the treating physician's rule[4] to Dr. Bassig, who stated in 2002 that Plaintiff was "advised to stay off work indefinitely," and to Dr. Vinay Reddy, a rheumatologist, who noted that he supported Plaintiff's application for disability. (R. at 209, 253.) These opinions, however, are not *medical* opinions because they do not relate to Plaintiff's medical condition. Instead, they relate to disability, which is a determination that is reserved to the Commissioner, not a treating physician. See 20 C.F.R. § 404.1527 (conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act). Thus, these opinions are not entitled to enhanced weight under the treating physician's rule.

13. Third, it appears that Plaintiff challenges the ALJ's finding that "[t]he claimant's allegations of symptoms and functional limitations are basically credible, but the medical evidence does not support the degree of limitation she alleges." (R. at 23.) Plaintiff faults the ALJ for "selectively look[ing]" at her daily activities. See Docket No. 16, p. 7. At bottom, it appears that she simply disagrees with the ALJ's assessment of her functional ability. But this is a determination that is reserved to the ALJ, and here the ALJ's findings are supported by substantial evidence in the record as discussed in his decision. (R. at 23-24.)

In any event, credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar). Here, the ALJ adequately articulated the reasons why he found Plaintiff's subjective complaints to be less than credible, most notably because they were inconsistent with her activities of daily living. (R. at 23-24.) Thus, this Court finds no cause to disturb the ALJ's credibility finding.

14. Plaintiff next argues that the ALJ ignored the findings made by the state agency psychiatric consultant, Dr. Daniel Mangold, and failed to consider whether mental limitations would be required based on Dr. Mangold's findings. Dr. Mangold assessed Plaintiff as "moderately limited" in several areas, but made no finding that she had any severe mental limitations. (R. at 172-73.) To the contrary, he noted that Plaintiff "seems to retain the mental ability to perform simple, repetitive work." (R. at 188.) In the absence of a finding that Plaintiff had severe mental limitations, the ALJ was not required to consider mental limitations or retain a vocational expert. See Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986) (vocational expert or other similar evidence is only required if non-exertional limitations "significantly" diminish claimant's ability to perform work).

15. Fifth, Plaintiff argues that the ALJ erred by finding that her limitations caused by lupus do not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulation No. 4, Section 14.02. This Listing has two parts — A and B. The ALJ found that Plaintiff's limitations do not meet or equal an impairment listed in 14.02A because there was no evidence of a major dysfunction of at least one extremity or gross anatomical deformity attendant to her lupus. (R. at 23.) Plaintiff does not appear to challenge this finding. Rather, she argues that the ALJ failed to consider whether she met or equaled the the requirements in 14.02B.

But Plaintiff herself concedes that she does not meet the the requirements of 14.02B. See Docket No. 16, p. 9 (noting that Plaintiff does not "precisely" meet the

requirements of 14.02B). And there is no persuasive evidence that Plaintiff's condition equals any of the limitations in 14.02B. Section 14.02B requires, in part, that the individual present signs of severe fatigue, fever, malaise, and weight loss. Other than her own subjective complaints (R. at 358), which the ALJ found to be less than credible, Plaintiff does not cite any evidence demonstrating that she suffered from any of these conditions. Thus, the ALJ did not err by finding that, on whole, Plaintiff's condition does not meet or equal an impairment listed in 14.02. (R. at 23.) This determination is supported by substantial evidence.

16.   Finally, Plaintiff argues that the ALJ did not explain what evidence he relied on to find that Plaintiff could return to her past relevant work. This contention is without merit. The ALJ set forth the law governing this portion of his analysis, and then proceeded to make findings relative to Plaintiff's ability to meet the requirements of her past relevant work. (R. at 23-24.) He noted that Plaintiff's past work as a retail store worker required standing for much of the day, but he also noted that occasional sitting was permitted. (R. at 24.) Petitioner performed this job at the light-exertional level. (R. at 24.) In this court's view, the ALJ appropriately considered the record as a whole, including his assessment that Plaintiff's subjective complaints are not fully supported by the medical evidence, to conclude that Plaintiff had the residual functional capacity to perform her past relevant work. As such, this Court detects no error in the ALJ's analysis, and finds that his conclusions regarding Plaintiff's residual functional capacity are supported by substantial evidence in the record.

17.   After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the

ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   September 21, 2007
         Buffalo, New York

                                              /s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                              United States District Judge